IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| ADELA L. VARGAS § | |
| § | |
| v. § | CIVIL ACTION NO. 5:13-CV-00184-FB |
| § | |
| SUNSHINE INDUSTRIES a/k/a § | |
| SUNSHINE LAUNDRY, INC. § | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

NOW COMES SUNSHINE LAUNDRY, INC. (hereinafter referred to as "Defendant" and/or "Sunshine Laundry"), Defendant in the above-styled and numbered cause, and, pursuant to FED. R. CIV. P. 56, files this its Motion for Summary Judgment (the "Motion") and moves this Court to grant judgment in its favor, for the reason there is no genuine issue of material fact, and Defendant therefore is entitled to judgment as a matter of law. In support thereof, Defendant respectfully shows as follows:

**I.
INTRODUCTION**

Plaintiff Adela Vargas ("Plaintiff") filed her Complaint on March 8, 2013, alleging that she had not been paid overtime as required by the Fair Labor Standards Act ("FLSA"). (Dkt. No. 1, ¶ 6). On July 18, 2013, Plaintiff filed her First Amended Complaint, correctly naming Sunshine Laundry as her former employer, and affirming her claim that she had been required to work in excess of forty (40) hours per week but had not been paid overtime as required by law. (Dkt. No. 23, ¶ 5). Sunshine answered Plaintiff's Complaint, denying Plaintiff's material allegations and asserting that Plaintiff had been properly compensated for all hours worked in accordance with applicable law. (Dkt. No. 22, ¶ 13).

4982561.5

## II.
## STATEMENT OF FACTS

Sunshine Laundry provides laundry services for its clients; its principal client is the federal government.[1] Sunshine Laundry employs washroom workers, production workers, drivers, a mechanic, supervisors, assistant supervisors and an administrative employee.[2] Because Sunshine Laundry contracts with the federal government, Sunshine Laundry employees performing work on the government contracts are entitled to wages and certain fringe benefits under the Service Contract Act, 41 U.S.C. § 351 *et seq.*[3] More specifically, service employees – those who perform work on the contract – are entitled to the "prevailing wage" as identified in the contract and to health and welfare benefits in a specified amount on the basis of all hours paid up to forty (40) per week.[4]

Plaintiff was employed by Sunshine Laundry from March 17, 2010 to October 28, 2012 as a production worker.[5] Plaintiff, like all of Sunshine Laundry's employees, used an electronic time clock to record her hours worked.[6] The clock requires employees to log in via a palm reader and entry of their personal employee key codes.[7] On those rare occasions when the clock is not functioning properly, the supervisor manually records employees' hours worked, which are later manually entered into the timekeeping system by Veronica Villarreal.[8] Employees are paid weekly after time records are printed and reviewed by Ms. Villarreal to confirm that no entries are missing.[9] If it appears that, for example, an employee clocked out at the end of the day

---

[1] *See* Declaration of Ken Harrison, attached hereto as Exhibit A.
[2] Ex. A.
[3] Ex. A.
[4] *See* Dep't of Labor, SCA Compliance Principles (2010), *available at* http://www.dol.gov/whd/recovery/pwrb/Tab10SCACompliance.pdf.
[5] Ex. A; *see also* Exhibit B, true and correct excerpts of the deposition of A. Vargas, 26:18-21.
[6] Ex. A; *see also* Ex. B, 42:5-9.
[7] Ex. A.; *see also* Ex. B, 47:1-9.
[8] Ex. A; *see also* Ex. B, 67:9-13.
[9] Ex. A; *see also* Ex. B, 53:20-21.

2

without having clocked in, Ms. Villarreal confirms with the supervisor and the employee the number of hours that should be recorded and paid for that date.[10]  Sunshine Laundry's policy requires employees to report any errors in their pay.[11]  Any employee who believes that he or she has not been paid for all hours worked or otherwise wishes to review the accuracy of their time and pay records is provided with a copy of the time record for the relevant week so that any discrepancy can be reviewed and corrected.[12]  If the review of time and pay records reveals that hours worked are not included in the check, the employee determines the timing and method of issuance of additional pay – whether through the issuance of a corrected check, a separate check or including the pay in the next week's check.[13]

### III.
### STANDARD AND BURDEN OF PROOF

A motion for summary judgment requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented.  FED. R. CIV. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett,* 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted).  A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986) ("The existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."); *Crawford v. Formosa Plastics Corp.,* 234 F.3d 899, 902 (5th Cir. 2000).

---

[10] *See also* Ex. B, 49:5-8.
[11] Ex. A.
[12] Ex. A.
[13] Ex. A.

The court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Crawford,* 234 F.3d at 902. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150-51 (2000) (quoting *Anderson,* 477 U.S. at 250-51).

Plaintiff asserts a claim for unpaid overtime under the FLSA. "An employee bringing an FLSA action for unpaid overtime compensation 'must first demonstrate that she has performed work for which she alleges she was not compensated,' and meets this burden of proof by proving that she 'in fact performed work' for which she did not receive overtime compensation and by producing 'sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" *Faery v. Weigand-Omega Mgmt.*, No. H-11-2519, 2010 U.S. Dist. LEXIS 104363, *7 (S.D. Tex. July 26, 2012) (quoting *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005)); *see also Reeves v. Int'l Tel. & Tel. Co.*, 1342, 1351 (5th Cir. 1980) ("[A]n employee who brings suit for unpaid overtime compensation bears the burden of proving, with definite and certain evidence, that he performed work for which he was not properly compensated."). Plaintiff cannot meet her burden and, accordingly, her claims must fail.

## IV.
## ARGUMENT AND AUTHORITIES

A.   **Plaintiff's Unpaid Overtime Claim Fails as a Matter of Law.**

Plaintiff's claim for unpaid overtime fails as a matter of law because she cannot meet her burden to prove that she worked hours for which she was not compensated. To meet her burden, Plaintiff would have to establish that she in fact performed work for Sunshine Laundry for which it did not properly compensate her and produce "'sufficient evidence to show the amount and

4

extent of that work as a matter of just and reasonable inference.'" *Harvill*, 433 F.3d at 441 (quoting *Anderson v. Mount Clemons Pottery Co.*, 328 U.S. 680, 687-88 (1946)). Plaintiff's "[e]vidence of hours worked need not be perfectly accurate as long as it provides a sufficient basis to calculate the number of hours worked." *Faery*, 2010 U.S. Dist. LEXIS 104363 at *7 (citations omitted). "If an employer's records are properly maintained and accurate, those records may be relied upon." *Id.* (citing *Rosales v. Lore*, 149 F. App'x 245, 246 (5th Cir., Aug. 19, 2005). Should Plaintiff make a preliminary showing that she performed work for which she was not properly compensated, the burden shifts to Sunshine Laundry to "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Harvill*, 433 F.3d at 441 (quotation omitted). Plaintiff cannot prove that she performed work for which she was not properly compensated, and she certainly cannot refute Sunshine Laundry's complete and accurate records of Plaintiff's hours worked.

   1. **<u>Plaintiff's Equivocal Testimony Falls Short of Her Burden of Proving that She Performed Work for Which She Was Not Compensated.</u>**

Plaintiff's First Amended Complaint does not include specific factual allegations clarifying the nature of her claims, and states only that Plaintiff was required to work more than forty (40) hours per week and was not paid overtime as required by law. In her deposition, when asked how often she worked overtime each week, Plaintiff responded with various inconsistent and indefinite answers:

> Q: How many hours, when you were tracking the hours worked, did you work on average per week by your own calculation?
>
> A: I think 46.[14]
>
> . . .

---

[14] Ex. B, 69:15-18.

Q: Can you think of a time that you worked less than six hours of overtime per week?

A: I don't remember; it's been so long. . .[15]

. . .

Q: And so if your pay records show about 46 hours of time worked, is that accurate or inaccurate?

A: I don't know. Because I would – I would see – I don't know what – it was like if – when you would see it short and then come out with the time that we would, like stay, and then I would see it, like, I was getting paid for that or the – or for us not to notice, that just to get that…[16]

. . .

Q: And how many hours would you be shorted? What's the range?

A: We would – I would—we were just short, and it was not just me; that's all. That's all I got to say.[17]

. . .

Q: And, on average, how many hours were you shorted? Is it three per week?

A: About three per week.

Q: Was it ever more than three?

A: (Witness nodding head "yes").

Q: Is that a "yes"?

A: Yes, ma'am.

Q: What's the most hours per week that you believe you were ever shorted?

A: Maybe – per week, right, you said?

Q: Right.

A: About seven.[18]

. . .

---

[15] Ex. B, 71:1-3.
[16] Ex. B, 74:11-19.
[17] Ex. B, 56:14-18.
[18] Ex. B, 57:23-58:9.

6

>       Q:  And so, if we were to look at your damages, on average, you think that you were shorted, like, three hours of pay per week; is that correct?
>
>       A:  I don't know.  I think so.  I mean – you know.  I don't have my pay stubs in front; but, yeah, I think – believe so.[19]
>
> . . .
>
>       Q:  How many hours during your employment did you work and not get paid?
>
>       A:  I don't – it's been so long, so I don't – I don't remember; but it – I don't – I don't remember.[20]

Plaintiff also testified that, at times, when she reported issues with her hours pursuant to the company's policy (*see supra* at 3), she would receive pay for the discrepancy[21] and that, at other times, she would complain that she had been shorted hours and would not receive additional compensation.[22]  Plaintiff's vague and nonspecific testimony is her sole evidence in support of her claim that she worked hours in excess of forty (40) in certain workweeks and was not properly compensated.

Based on Plaintiff's testimony, it is clear that Plaintiff has no idea how many hours she allegedly worked without being properly compensated.  Plaintiff's allegations are no different than the "unsubstantiated assertions" of the plaintiff in *Harvill v. Westward Communications, L.L.C*.  433 F.3d 428 (5th Cir. 2005).  In *Harvill*, the plaintiff had asserted that she had worked 210 hours of overtime, that she was required to turn in false time sheets and that her employer suffered or permitted her to work overtime; the Fifth Circuit affirmed summary judgment against her, stating that she "offers absolutely no evidence that she actually worked the hours she

---

[19] Ex. B, 91:24-92:4.
[20] Ex. B, 62:16-20.
[21] Ex. B, 55:14-23; 56:4-13.
[22] Ex. B, 54:16-55:4.  Plaintiff equivocated when asked to confirm that she had, in fact, complained ("So if Veronica testifies that you never came in and complained about your pay, whether it was related to your hours or to your overtime pay, is she telling the truth?" . . . "Well, the – it – the check stubs tells you that.  So that's all I want to say, I guess.  I don't know.")  Ex. B, 66:20-23, 67:3.

alleges, or that [her employer] was aware that she worked overtime hours without compensation." *Id.* at 441.

To the extent Plaintiff's testimony offers any evidence in support of her claim, such evidence is undermined by the fact that Plaintiff, by her own admission, destroyed the most relevant evidence then in her possession after consulting with counsel. Plaintiff stated in her deposition that, during her employment, she had maintained a tablet on which she recorded her hours worked.[23] She further stated that she would determine that her pay did not include all hours worked based on comparing this tablet to her paycheck.[24] Clearly, then, when consulting an attorney regarding her claim against her former employer, Plaintiff knew or should have known that the tablet would be relevant to her claim that she had not been paid for all overtime hours worked. *See, e.g., Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 612 (S.D. Tex. 2010). Instead of preserving the tablet on which she purports to have contemporaneously recorded data regarding her hours worked, Plaintiff states that she threw away the tablet after her employment was terminated and after she had retained counsel to pursue claims against Sunshine Laundry.[25] While Sunshine Laundry does not presently move for sanctions on this issue, the fact that Plaintiff destroyed the only alleged documentary evidence in her possession on which she had relied after speaking with her attorney is at least some evidence that the tablet was disposed of in bad faith because its contents were not helpful. *See, e.g., Lopez v. Kempthorne*, 684 F. Supp. 2d 827, 890 (S.D. Tex. 2010) (*citing Whit v. Stephens Cnty.*, 529 F.3d 278, 284-85 (5th Cir. 2008) (quotations and citations omitted) *and Wal-Mart Stores, Inc. v.*

---

[23] Ex. B, 51:13-16.
[24] Ex. B, 53:22-25; 59:7-12 ("And you're basing your belief that you were shorted hours based on your comparison of your tablet where you recorded hours and your paycheck; is that correct?" – "Yeah. But I don't have that tablet anymore. That's been years.").
[25] Ex. B, 60:1-5.

8

*Johnson*, 106 S.W.3d 718, 721 (Tex. 2003) ("'a party who has deliberately destroyed evidence is presumed to have done so because the evidence was unfavorable to its case.'")).

> **2. Even If Plaintiff Could Meet Her Burden of Proof, Sunshine Laundry's Time Records Negate the Reasonableness of Such Proof.**

Even if Plaintiff were able to marshal credible evidence in support of her claim, Sunshine Laundry's time and pay records, when compared to Plaintiff's equivocal and contradictory testimony, establish the amount of work performed by Plaintiff and negate the reasonableness of Plaintiff's evidence. During Plaintiff's employment, she kept track of her time by using an electronic time clock that required entry of an employee key code and her palm print.[26] Plaintiff has testified that she clocked in before starting work and that she clocked out only after completing her work for the day.[27] Plaintiff stated that there was no problem with the time clock,[28] and Plaintiff stated that her check stubs from Sunshine Laundry are the only documents in her possession in support of her claims.[29] Plaintiff's time reports demonstrate that she worked in excess of forty (40) hours in a workweek on multiple occasions.[30] Plaintiff's pay records for these periods demonstrate that she was paid for such time.[31] Again, in the face of Sunshine Laundry's records, which Plaintiff herself identifies as supportive of her claims, Plaintiff's unsubstantiated assertions that she worked some indefinite number of hours of overtime for which she was not compensated must fail:

> Undisputed evidence establishes that [the employer's] policy required employees to track the time they work via an electronic badge system, that plaintiff participated in this electronic system and received pay for overtime hours that she worked 'on the clock,' and that plaintiff's supervisor [] who normally left the hospital before plaintiff's shift ended, had no reason to believe that if plaintiff

---

[26] Ex. B, 47:1-9.
[27] Ex. B, 47:10-24; 47:25-48:4.
[28] Ex. B, 59:2-6.
[29] Ex. B, 77:12-24.
[30] Exhibit C, true and correct copies of A. Vargas' time records.
[31] Exhibit D, true and correct copies of A. Vargas' pay records.

>worked overtime hours plaintiff would not be paid for such hours. . . In light of the undisputed evidence on which the defendant relies, plaintiff's unsubstantiated assertions that she worked overtime hours for which she was not paid fail to raise a genuine issue of material fact that [the employer] suffered or permitted her to work overtime hours for which she was not paid.

*Ihegword v. Harris Cnty. Hosp. Dist.*, 929 F. Supp. 2d 635, 666-67 (S.D. Tex. 2013).

### B. To the Extent Plaintiff Alleges that Overtime Was Miscalculated, Her Claim Must Fail.

While not made clear by the language of her Complaint, Plaintiff has testified that, in addition to claiming that she was not paid for all hours worked, she is claiming that when she was paid at an overtime rate for hours worked over forty (40) in a particular workweek, her overtime rate was miscalculated.[32] Plaintiff provides limited detail regarding the exact nature of her claim. However, Sunshine Laundry again maintains that Plaintiff was properly compensated for all hours worked under the relevant laws.

#### 1. Sunshine Laundry and Its Employees are Covered Under the Service Contract Act.

Sunshine Laundry has always maintained, and Plaintiff does not dispute, that Sunshine Laundry is covered by the Service Contract Act by virtue of its contracts with the federal government. The SCA applies to every contract entered into by the United States where the principal purpose of the contract is to furnish services to the United States through the use of service employees. 29 C.F.R. § 4.110. The SCA defines "service employee" as "any person engaged in the performance of a contract entered into by the United States and not exempted under section 356 of this title." 41 U.S.C. § 357. As Plaintiff was an employee of Sunshine Laundry who was engaged to perform the services that were the subject of Sunshine Laundry's contracts with the government, Plaintiff was a "service employee" covered by the SCA.

---

[32] Ex. B, 86:17-23.

The SCA imposes certain obligations upon Sunshine Laundry that are not required of other private employers. For example, the contracts with Sunshine Laundry specify wage determinations, or rates at which specified classes of service employees must be paid rather than simply the minimum wage as required under the FLSA; service employees on the contract must receive at least this rate.[33] In addition, Sunshine Laundry is required to pay its employees specified fringe benefits in addition to the wage rate specified in the relevant contracts. 41 U.S.C. § 351(a)(2). Sunshine Laundry chooses to fulfill its obligation by furnishing cash payments in lieu of benefits, as is permitted by the SCA. 41 U.S.C. § 351(a)(2).

2. **SCA Regulations Specifically Exclude Cash Paid in Lieu of Fringe Benefits from the Calculation of the Regular Rate.**

The Department of Labor ("DOL"), the agency charged with administration of both the SCA and the FLSA, has specifically provided that, for service employees such as Plaintiff who are covered by the SCA, the payment of cash in lieu of fringe benefits required under the relevant contract may be excluded from the computation of the regular rate for purposes of calculating overtime:

> If [the employer] furnishes equivalent benefits or makes cash payments, or both, to [a service] employee as authorized herein, the amounts thereof, which discharge the employer's obligation to furnish such specified fringe benefits, may be excluded pursuant to this Act from the employee's regular or basic rate of pay in computing any overtime pay due the employee under any other Federal law.

29 C.F.R. § 4.177(e). In regulations addressing the calculation of the regular rate and the payment of overtime under the FLSA, the DOL has further clarified that:

> fringe benefits or cash payments which are authorized under the [SCA] to be provided in lieu of the fringe benefits specified in determinations under such Act are excludable from the regular rate in applying the overtime provisions of the [FLSA] if the fringe benefits specified under the [SCA] would be so excludable if

---

[33] The rate to be paid to service employees, even if not specified in the contract at issue, is never below the federal minimum wage. 29 C.F.R. § 4.169.

11

actually furnished. This is true regardless of whether the equivalent benefits or payments themselves meet the requirements of [29 U.S.C. § 207(e)].

29 C.F.R. § 778.7. *See also*, Dep't of Labor, Field Operations Handbook § 14k00 (Oct. 25, 2010) ("The SCA excludes the amounts paid by a contractor or subcontractor for FBs in the computation of overtime under the FLSA and CWHSSA whenever the overtime provisions of either of those acts apply concurrently with the SCA's wage provisions."). The DOL regulations further provide an example of the proper calculation of the overtime rate for service employees covered by the SCA who are paid cash in lieu of required fringe benefits:

> A company pays a service employee $4.50 an hour in cash under a wage determination which requires a monetary rate of not less than $4 and a fringe benefit contribution of 50 cents which would qualify for exclusion from the regular rate under section 7(e) of the Fair Labor Standards Act. The contractor pays the 50 cents in cash because he made no contributions for fringe benefits specified in the determination and the contract. Overtime compensation in this case would be computed on a regular or basic rate of $4 an hour.

29 C.F.R. § 4.182(a).

Sunshine Laundry compensated Plaintiff in compliance with the above-referenced regulations, and, therefore, in compliance with the FLSA and the SCA.[34] For example, at the time of her termination, the wage determination applicable to Plaintiff required that she be paid $8.64 per hour and an additional $3.59 per hour in fringe benefits for all hours worked up to 40 hours per week; Sunshine Laundry paid Plaintiff at a rate of $12.96 per hour for hours worked over forty, or one-and-one half times Plaintiff's regular rate, excluding the $3.59 paid to Plaintiff in cash in lieu of the fringe benefits required under the contract.[35]

---

[34] When reviewing various pay practices of the company, a Department of Labor Investigator specifically found that Sunshine Laundry's method of paying overtime was proper. *See* Ex. E (noting "No violations. The [employees] were paid [overtime] properly at or above the [wage determination] rates."); *see also* FED. R. EVID. 803(8)(A)(iii) (hearsay exception); FED. R. EVID. 902(1) and (2) (self-authenticating public records).
[35] Ex. A; Ex. D.

### 3. The DOL's Regulations as to This Issue Are Entitled to Deference.

As the DOL is charged with the administration of both the SCA and the FLSA, the DOL's regulations interpreting these statutes are entitled to deference as outlined in *Chevron U.S.A., Inc. v. Natural Resource Defense Counsel, Inc.* 467 U.S. 837 (1984). An agency's reasonable interpretation of a silent or ambiguous statute is entitled to deference. *Id.* at 842-43. The DOL regulations quoted above serve to clarify provisions of the SCA and FLSA that are silent or ambiguous as to the specific issue of whether cash payments made in lieu of fringe benefits required by the SCA are excluded from the regular rate applicable to service employees covered by the SCA.

The statutory provisions of the SCA do not specifically address whether fringe benefit payments required by the SCA are to be included or excluded from the calculation of the employees' regular rate for purposes of calculating overtime. The SCA only addresses whether the regular or basic rate of pay *must* include benefits that are excluded from the regular rate by the FLSA, "In determining any overtime pay to which such service employees are entitled under any Federal law, the regular or basic hourly rate of pay of such an employee shall not include any fringe benefit payments computed hereunder which are excludable from the regular rate under the Fair Labor Standards Act." 41 U.S.C. § 355. The statute makes no reference to the specific method by which the employer provides the benefits, nor does the statute state that *only* those payments otherwise excludable from the regular rate under the FLSA are to be excluded from the computation of the regular or basic rate of service employees.

In addition, the SCA provides that the employer may discharge its obligation to provide fringe benefits required by the contract "by furnishing any equivalent combinations of fringe benefits or by making equivalent or differential payments in cash *under rules and regulations established by the Secretary*." 41 U.S.C. § 351(a)(2) (emphasis added). This statement that cash

13

payments in lieu of benefits are to be made "under rules and regulations established by the Secretary" evidences Congress' intent to leave a gap for the DOL to fill. Rather than adding to the SCA provisions specifying the means by which covered employers were to make cash payments in lieu of benefits and the way cash in lieu of benefits would be treated and interpreted under other statutory and regulatory provisions, Congress contemplated that the DOL would address these issues under its rules and regulations – "an express delegation of authority to the agency to elucidate a specific of the statute by regulation." *Chevron*, 467 U.S. at 844. Where Congress has explicitly or implicitly left a gap for the agency to fill through the enactment of rules and regulations, "such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Id.* (citations omitted). Considerable weight is accorded to an agency's construction of a statutory scheme it is entrusted to administer, particularly where the construction "represents a reasonable accommodation of conflicting policies that were committed to the agency's care by statute." *Id.* at 844-45.

      The DOL, the agency charged with interpreting and administering both the SCA and the FLSA, enacted the above-quoted regulations clarifying that the particular form in which the employer fulfilled its fringe benefit obligations under the SCA did not determine whether or not such provision of benefits should be included in the calculation of the service employees' regular rates. The regulations clearly and unambiguously state that the fact that an employer provides fringe benefits in the form of cash payments, in whole or in part, does not require the inclusion of any portion of the fringe benefits in the service employees' regular rates of pay. 29 C.F.R. §§ 4.177(e), 778.7, 4.182(a). In filling the gap expressly left by Congress to establish regulations related to the payment of cash in lieu of benefits, the DOL has not acted in a way that is

"arbitrary, capricious, or manifestly contrary to the statute[s]," and, therefore, the regulations are entitled to deference.

Even disregarding the grant of regulatory authority on this issue, the SCA itself says nothing about whether or not such SCA-authorized cash payments made in lieu of benefits, not otherwise excludable from the regular rate under the FLSA, are excludable from the regular rate for service employees covered by the SCA. Thus, the SCA is silent on the specific question of whether SCA-mandated benefits, when paid in the specific form of cash in lieu of benefits, may be excluded from the calculation of the regular rate. The SCA's reference to the Secretary's rules and regulations dictating the means by which such cash payments in lieu of specified benefits are to be paid is an acknowledgment that the SCA itself does not speak to all issues related to the payments and that, therefore, the SCA is silent or ambiguous on at least some issues related to such payments.[36] Therefore, the question for judicial review is whether the agency's interpretation is based on a permissible construction of the statute. *Chevron*, 467 U.S. at 843. The DOL's interpretation of the statute to treat cash payments in lieu of fringe benefits in the same way the fringe benefits themselves are treated for purposes of determining the regular rate for service employees covered by the SCA is in no way contrary to the statute, as the SCA is silent on this particular issue.

---

[36] Other courts have considered whether the SCA and FLSA are silent or ambiguous with respect to the issue of whether the payment of cash in lieu of fringe benefits should be included in the computation of the service employees' regular rates. *Compare, e.g., Phelps v. Parsons Tech. Support, Inc.*, No. 2:09-0327, 2010 U.S. Dist. LEXIS 116197 (S.D. Ind. Oct. 29, 2010) (granting employer's motion for judgment on the pleadings and concluding that the employer's cash payments made in lieu of fringe benefits pursuant to the SCA were excludable from the regular rate), *with Bonner v. Metro. Sec. Servs.*, SA-10-CV-937, 2011 U.S. Dist. LEXIS 26251 (W.D. Tex. Mar. 15, 2011) (denying employer's motion for judgment on the pleadings and finding that the DOL construed the SCA in a manner not authorized by the SCA's reference to the FLSA such that cash wages should not be excluded from the regular rate). It does not appear that the parties in either of these cases asked the courts to address the language in 41 U.S.C. § 351(a)(2) specifically authorizing the DOL to establish rules and regulations regarding cash payments to discharge fringe benefit obligations under the SCA.

As shown, and as made clear through the application of the relevant regulations, Plaintiff was compensated for all hours worked in compliance with the relevant provisions of the SCA and FLSA, she cannot meet her burden of proof, and Plaintiff's claims must fail.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant respectfully requests that the Court grant this Motion, dismiss Plaintiff's claims with prejudice, and grant such other and further relief to which Defendant is justly entitled.

Respectfully submitted,

 */s/ Ramon D. Bissmeyer*
**Ramon D. Bissmeyer**
State Bar No. 00787088
**Elizabeth A. Thompson**
State Bar No. 24075160
**COX SMITH MATTHEWS INCORPORATED**
112 East Pecan Street, Suite 1800
San Antonio, Texas 78205
Telephone:   (210) 554-5500
Facsimile:    (210) 226-8395

**ATTORNEYS FOR DEFENDANT**

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 4th day of December, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Mr. Adam Poncio
PONCIO LAW OFFICES
5410 Fredericksburg Road, Suite 109
San Antonio, Texas 78229-3550

Mr. Glenn J. Deadman
LAW OFFICES OF GLENN J. DEADMAN, P.C.
509 South Main Avenue
San Antonio, Texas 78204

                                                    */s/ Ramon D. Bissmeyer*
                                                    Counsel for Defendant

4982561.5